IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL and ENVIRONMENTAL DEFENSE FUND,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>    Defendant. | Case No. 18-cv-11227<br>ECF Case |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

In April 2018, Defendant U.S. Environmental Protection Agency (EPA) notified the public of its intent to revise light-duty vehicle greenhouse gas emission standards for future model years. In advance of that proposed rulemaking, and to enable meaningful public comment on highly-technical standards, Plaintiffs Natural Resources Defense Council (NRDC) and Environmental Defense Fund (EDF) submitted to EPA a request pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiffs requested certain limited agency records relating to the technological feasibility of greenhouse gas emission standards—records of the sort that EPA has historically made public as a matter of course. EPA failed to respond by FOIA's clear statutory deadline. EPA then continued to violate FOIA for months—withholding the requested records through the entire public comment period for the proposed rule—despite repeated calls for disclosure. EPA is breaking the law and denying access to records of clear and immediate public interest.

1

# INTRODUCTION

1.      In 2009, EPA determined that emissions of greenhouse gases from new motor vehicles cause or contribute to air pollution that endangers the public health and welfare. EPA subsequently undertook to establish greenhouse gas emission standards for light-duty vehicles pursuant to the Clean Air Act.

2.      To assess the cost and effectiveness of technologies needed to meet these standards, EPA developed a computer model called the Optimization Model for reducing Emissions of Greenhouse gases from Automobiles (OMEGA).

3.      EPA relied on OMEGA and its outputs to support rulemakings establishing light-duty vehicle greenhouse gas emission standards for every model year from 2012 through 2025. Throughout these various rulemakings, EPA updated OMEGA and its input data to reflect the latest technological developments. As it revised and updated OMEGA, EPA publicly released revisions of the model source code, input data, and documentation. EPA last publicly released OMEGA source code in 2016. However, EPA has continued to revise OMEGA and its inputs since then.

4.      In April 2018, EPA notified the public of its intent to initiate notice and comment rulemaking to revise light-duty vehicle greenhouse gas emission standards for upcoming model years. 83 Fed. Reg. 16,077 (Apr. 13, 2018). Following this announcement and in advance of the proposed rulemaking, NRDC and EDF jointly requested that EPA release OMEGA-related records pursuant to the Freedom of Information Act.

5. EPA received the FOIA request on or before August 10, 2018. FOIA requires an agency to substantively respond to a FOIA request within twenty business days. EPA did not substantively respond by this deadline.

6. On August 24, 2018, EPA published a proposed rule that would reduce the stringency of light-duty vehicle greenhouse gas emission standards for multiple model years starting with model year 2021 vehicles. 83 Fed. Reg. 42,986 (Aug. 24, 2018). Unlike every prior rulemaking establishing light-duty vehicle greenhouse gas emission standards, EPA did not rely on OMEGA in the August 2018 proposal, instead ostensibly relying on another model, Volpe, utilized by the National Highway Traffic Safety Administration (NHTSA) to set fuel economy standards. EPA nevertheless continued to utilize OMEGA and to update OMEGA and its inputs. During the public comment period for the proposal, multiple commenters, including Plaintiffs, noted deficiencies with Volpe and suggested that EPA should validate aspects of the proposal using its latest OMEGA model.

7. Despite repeated requests from Plaintiffs and others, including the State of California, EPA continued to withhold the requested OMEGA-related records through the entire public comment period.

8. The public has a strong interest in the government's implementation of environmental and health laws. EPA has announced its intention to finalize its rule in March 2019. EPA's ongoing failure to release its OMEGA-related records deprives the public of information relevant to assessing the agency's rulemaking. This failure does not just demonstrate a troubling lack of transparency by EPA—it

is flatly unlawful under FOIA. Plaintiffs NRDC and EDF bring this action to compel EPA to follow the law and disclose these records immediately.

## PARTIES

9.  Plaintiff NRDC is a national, non-profit environmental and public health membership organization with hundreds of thousands of members. NRDC engages in research, advocacy, public education, and litigation related to protecting public health and the environment. NRDC is a not-for-profit, tax-exempt organization incorporated under the laws of the State of New York with its headquarters in New York City.

10. Plaintiff EDF is a non-profit environmental organization with more than two million members and supporters. Established in 1967, EDF seeks to solve some of the most critical environmental problems facing humanity, including climate change, pollution, and toxic chemical exposure, and to educate the public about these problems. Among EDF's highest priorities is ensuring that EPA fulfills its critical mission in a manner that is transparent, ethical, fact-based, and free from undue influence. EDF is a not-for-profit, tax-exempt organization incorporated under the laws of the State of New York, with headquarters in New York City and offices in eight other cities across the United States.

11. Defendant EPA is a federal agency within the meaning of FOIA, 5 U.S.C. § 551(1), and has possession or control of the records Plaintiffs seek.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

13. Venue is proper in this district because Plaintiffs NRDC and EDF reside and have their principal places of business in this judicial district. 5 U.S.C. § 552(a)(4)(B).

## STATUTORY FRAMEWORK

14. FOIA requires that federal agencies release information to the public, upon request, unless one of nine statutory exemptions from disclosure applies. 5 U.S.C. § 552(a)-(b).

15. Within twenty business days of an agency's receipt of a FOIA request, the agency must issue a determination resolving the request, and must "immediately notify" the requester of "such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i)(I).

16. An agency must "promptly" release requested, non-exempt records requested in accordance with FOIA. 5 U.S.C. § 552(a)(6)(C)(i).

17. In "unusual circumstances," an agency may extend the twenty-day time limit for responding to a FOIA request by up to ten business days. 5 U.S.C. § 552(a)(6)(B)(i). Any such extension must be "by written notice" to the requester, "setting forth the unusual circumstances for such extension and the date on which a determination is expected." *Id.*

18.     If the agency fails to comply with the statutory time limits, the requester is deemed to have exhausted her administrative remedies and may immediately file suit. 5 U.S.C. § 552(a)(6)(C)(i).

19.     FOIA grants federal district courts the authority to enjoin an agency from withholding agency records and "to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

## FACTS

### *EPA's OMEGA Model*

20.     In 2009, EPA determined that emissions of greenhouse gases from new motor vehicles cause or contribute to air pollution that endangers the public health and welfare. 74 Fed. Reg. 66,496 (Dec. 15, 2009). Pursuant to the Clean Air Act, EPA then undertook to develop and finalize, for the first time, greenhouse gas emission standards for new motor vehicles. 75 Fed. Reg. 25,324 (May 7, 2010).

21.     A "critical technical underpinning" of EPA's analysis of the feasibility and cost of potential greenhouse gas standards was the agency's estimate of the cost and effectiveness of emission control technologies. *Id.* at 25,329.

22.     To assess the cost and effectiveness of emission control technologies, EPA developed a computer model called the Optimization Model for reducing Emissions of Greenhouse gases from Automobiles (OMEGA).

23.     OMEGA projects the technology cost for automobile manufacturers to meet various fleet-wide levels of greenhouse gas emissions.

24. OMEGA utilizes sets of input data, including:

   i. a description of manufacturers' vehicle fleets;

   ii. a description of available emission control technologies, primarily their cost and effectiveness;

   iii. vehicle operational data, such as scrappage rates (the rates at which vehicle owners discontinue use of their vehicles);

   iv. economic data, such as fuel prices and discount rates; and

   v. a description of the emission standards being modeled.

With these various inputs, OMEGA projects how manufacturers would apply available technologies to meet emission standards. *See id.* at 25,452-54.

25. In May 2010, EPA promulgated greenhouse gas emission standards for model year (MY) 2012-2016 light-duty vehicles. *Id.* at 25,324. EPA utilized OMEGA and its outputs in setting these standards. During the rulemaking process, EPA publicly released the then-current version of OMEGA. EPA also released associated model input data and documentation.

26. EPA periodically revises OMEGA source code.

27. EPA periodically revises OMEGA input data.

28. EPA utilized the then-current OMEGA model and its outputs to inform every analysis of light-duty vehicle greenhouse gas emission standards from the inception of standards until at least last year, including:

  i. A September 2010 technical assessment report prepared to inform setting standards for MY 2017 and beyond, issued jointly with NHTSA and the California Air Resources Board (CARB);[1]

  ii. A December 2011 proposed rule to establish standards for MY 2017-2025 light-duty vehicles;[2]

  iii. An October 2012 final rule establishing the MY 2017-2025 standards;[3]

  iv. A July 2016 technical assessment report prepared to evaluate the continued feasibility of later-year standards (MY 2022-2025), issued jointly with NHTSA and CARB;[4]

  v. A November 2016 proposed determination that the MY 2022-2025 standards continue to be appropriate;[5] and

---

[1] EPA, NHTSA, & CARB, *Interim Joint Technical Assessment Report: Light-Duty Vehicle Greenhouse Gas Emission Standards and Corporate Average Fuel Economy Standards for Model Years 2017-2025* (Sept. 2010).
[2] EPA & NHTSA, Proposed Rule: *2017 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions and Corporate Average Fuel Economy Standards*, 76 Fed. Reg. 74,854 (Dec. 1, 2011).
[3] EPA & NHTSA, Final Rule: *2017 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions and Corporate Average Fuel Economy Standards*, 77 Fed. Reg. 62,624 (Oct. 15, 2012).
[4] EPA, NHTSA, & CARB, *Draft Technical Assessment Report: Midterm Evaluation of Light-Duty Vehicle Greenhouse Gas Emission Standards and Corporate Average Fuel Economy Standards for MY 2022-2025* (July 2016).
[5] EPA, *Proposed Determination on the Appropriateness of the Model Year 2022-2025 Light-Duty Vehicle Greenhouse Gas Emissions Standards under the Midterm Evaluation* (Nov. 2016).

      vi.  A January 2017 final determination to maintain the MY 2022-2025 light-duty vehicle greenhouse gas emission standards.[6]

29.    Throughout these proceedings, EPA has repeatedly released the then-current OMEGA model and its inputs to the public. EPA released these records in the form of downloadable software and data files on its website.

30.    Various members of the public, Plaintiffs included, have the capability to utilize OMEGA and have used this capability to independently and publicly assess past EPA analyses.

31.    EPA released at least five different revisions of OMEGA and associated source code, along with documentation, inputs and outputs, over the period 2009 to 2017. As of December 3, 2018, these legacy records remain available on EPA's public website at https://www.epa.gov/regulations-emissions-vehicles-and-engines/optimization-model-reducing-emissions-greenhouse-gases.

32.    EPA last publicly released the OMEGA model source code in July 2016.

33.    EPA has revised the OMEGA model source code since the July 2016 public release.

34.    EPA utilized OMEGA in preparing an April 2018 presentation for the Office of Information and Regulatory Affairs.

---

[6] EPA, *Final Determination on the Appropriateness of the Model Year 2022-2025 Light-Duty Vehicle Greenhouse Gas Emissions Standards under the Midterm Evaluation* (Jan. 2017).

35. The OMEGA model that EPA utilized to prepare this April 2018 presentation was not the same version as the OMEGA model publicly released in July 2016.

36. The current OMEGA source code is not publicly available.

37. EPA last publicly released significant OMEGA input data in November 2016. EPA released a limited set of input files in April 2017 and October 2018, but it did not release a complete set of input data at those times.

38. Since the November 2016 public release of input data, EPA revised some OMEGA input data in addition to the data released in April 2017 and October 2018.

39. A March 2017 EPA presentation represented that updates to OMEGA were underway. *See* https://www.epa.gov/sites/production/files/2017-03/documents/fuel-economy-detroit-2017-03-16.pdf.

40. EPA used its Advanced Light-Duty Powertrain and Hybrid Analysis (ALPHA) modeling to revise technology effectiveness input values for OMEGA since November 2016.

41. EPA staff described some revisions to its process for determining technology effectiveness in an April 2018 paper titled "Representing GHG Reduction Technologies in the Future Fleet with Full Vehicle Simulation." *See* https://www.epa.gov/sites/production/files/2018-10/documents/sae-paper-2018-01-1273.pdf.

42. The technology effectiveness methodology described in the April 2018 paper is not the same methodology utilized in EPA's November 2016 data release.

43. The current set of OMEGA input data is not publicly available.

*NRDC and EDF Request that EPA Disclose Recent OMEGA Records*

44. On March 20, 2018, Plaintiffs and others submitted a letter to EPA Assistant Administrator William Wehrum requesting that EPA release updated OMEGA-related records. EPA did not reply to this letter.

45. In April 2018, EPA informed the public that the agency intended to initiate a notice and comment rulemaking concerning light-duty vehicle greenhouse gas emission standards for upcoming model years. EPA did not release any updated OMEGA-related records at the time of this notice.

46. In a July 2018 presentation to the National Academy of Sciences, EPA represented that the agency's recent work included technology/cost optimization modeling with OMEGA.[7]

47. With EPA still failing to make OMEGA and its current inputs publicly available, NRDC and EDF submitted a FOIA request to EPA (the "FOIA request," dated July 25, 2018, attached hereto as Exhibit A).

48. EPA received the FOIA request on or before August 10, 2018. EPA assigned the FOIA request a tracking code, EPA-HQ-2018-010465.

---

[7] *See* EPA Presentation (July 16, 2018), https://www.regulations.gov/document?D=EPA-HQ-OAR-2018-0283-0771.

49. The FOIA request sought recent OMEGA-related records, including specifically:

   i. "Any and all versions of [OMEGA] not previously made public" including "source code," "documentation," and "decision trees";

   ii. "Any and all input files" for OMEGA including data supporting inputs for "baseline fleet(s)" and the "effectiveness," "costs," and "penetrations" of emission control technologies;

   iii. "The methodology . . . used to develop" technology effectiveness inputs;

   iv. "Data and analysis regarding" model assumptions for the "timing" of vehicle "redesign and refresh cycles";

   v. Any records indicating the method "used to convert" empirical data "into inputs to the OMEGA models";

   vi. Any data, analysis, or models regarding related vehicle operational data, such as "scrappage rates," and economic data, such as "sale prices"; and

   vii. Any data or analysis on "the impact of vehicle fuel economy and/or vehicle price on the amount of driving done by vehicle operators."

50. In the FOIA request, NRDC and EDF asked that EPA grant a public interest waiver, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), of any fee EPA would otherwise charge for searching for and producing the requested records.

51. On August 21, 2018, EPA sent a letter regarding the FOIA request to NRDC (attached hereto as Exhibit B).

52. In the August 21, 2018 letter, EPA granted the fee waiver. EPA also represented that the FOIA request would be processed as expeditiously as possible. The letter did not include any determination by EPA regarding whether EPA would comply with the FOIA request. The letter also did not include any written notice setting forth unusual circumstances for an extension of FOIA's statutory response times.

53. On August 24, 2018, EPA published a proposed rule that would revise light-duty vehicle greenhouse gas emission standards for model years 2021-2025.

54. EPA set the public comment period for the proposal at sixty days. Multiple parties, including Plaintiffs, requested that EPA extend the public comment period by at least sixty days. EPA ultimately extended the public comment period by three days.

55. September 10, 2018, was the twentieth day (excepting Saturdays, Sundays, and legal public holidays) after EPA received the FOIA request.

56. EPA did not inform Plaintiffs by September 10, 2018, of EPA's determination regarding whether it would comply with the FOIA request.

57. On September 20, 2018, Plaintiffs and others sent a letter to EPA Assistant Administrator William Wehrum requesting that EPA release previously-requested OMEGA-related data and documents (attached hereto as Exhibit C). The letter noted that EPA had still not released any records in response to Plaintiffs'

FOIA request. The letter noted Plaintiffs' concern "that the records will not be released through FOIA in time to allow for meaningful review and analysis before the public comment deadline." EPA did not reply to this letter and did not release the requested records.

58. In public comments submitted in October 2016, Plaintiffs and other members of the public renewed calls for EPA to disclose OMEGA-related records.

59. The public comment period for the proposed rule closed on October 26, 2018.

60. As of December 3, 2018, the FOIAonline.gov website page for Plaintiffs' FOIA request, tracking code EPA-HQ-2018-010465, provided an estimated date of completion for the FOIA request of September 26, 2018.

61. As of December 3, 2018, the FOIAonline.gov website page for tracking code EPA-HQ-2018-010465 provided the final disposition of the FOIA request as "undetermined."

62. As of December 3, 2018, EPA had not notified NRDC of EPA's determination of whether it will comply with the FOIA request and EPA's reasons therefor.

63. As of December 3, 2018, EPA had not notified EDF of EPA's determination of whether it will comply with the FOIA request and EPA's reasons therefor.

64. As of December 3, 2018, EPA had not provided written notice to NRDC of unusual circumstances to extend the FOIA statutory response times.

65. As of December 3, 2018, EPA had not provided written notice to EDF of unusual circumstances to extend the FOIA statutory response times.

66. As of December 3, 2018, EPA had not released any of the records requested in the FOIA request.

67. As of December 3, 2018, EPA had not released all of the records requested in the FOIA request.

## CLAIM FOR RELIEF

### COUNT ONE
### 5 U.S.C. § 552(a) (FOIA)

68. Plaintiffs incorporate by reference all preceding paragraphs.

69. Plaintiffs have a statutory right under FOIA to obtain immediately all records responsive to their FOIA request that are not exempt from disclosure.

70. EPA violated its statutory duty under FOIA, 5 U.S.C. § 552(a), to release all non-exempt requested records to Plaintiffs.

## REQUEST FOR RELIEF

Plaintiffs NRDC and EDF respectfully request that the Court enter judgment against Defendant EPA as follows:

A. Declaring that EPA has violated FOIA by failing to timely provide a final determination on Plaintiffs' FOIA request, and by failing to timely produce non-exempt records requested by Plaintiffs;

B. Ordering EPA to disclose all requested records without further delay, and without charging search or duplication fees;

  C. Retaining jurisdiction over this case to rule on any assertion by EPA that any requested records are exempt from disclosure;

  D. Ordering EPA to produce an index identifying any responsive records that EPA withholds as exempt from disclosure, and the basis for the withholding, promptly upon determining to withhold such records;

  E. Awarding Plaintiffs their costs and reasonable attorneys' fees; and

  F.  Granting such other relief that the Court deems just and proper.


Dated: December 3, 2018     Respectfully submitted,

                */s/Pete Huffman*
                Benjamin Longstreth
                Peter Huffman
                Natural Resources Defense Council
                1152 15th Street NW, Suite 300
                Washington, D.C. 20005
                (202) 289-2428
                blongstreth@nrdc.org
                phuffman@nrdc.org

                *Counsel for*
                *Natural Resources Defense Council*

                */s/Matthew Littleton*
                Matthew Littleton*
                Donahue, Goldberg & Weaver, LLP
                1008 Pennsylvania Ave. SE
                Washington, D.C. 20003
                (202) 683-6895
                matt@donahuegoldberg.com

                */s/Benjamin Levitan*
                Benjamin Levitan*
                Erin Murphy**
                Environmental Defense Fund
                1875 Connecticut Ave. NW, Suite 600
                Washington, D.C. 20009
                (202) 572-3500
                blevitan@edf.org
                emurphy@edf.org

                *Counsel for Environmental Defense Fund*

                * Application for admission pending.
                ** Application for admission
                *pro hac vice* pending